# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAMAR ADVANTAGE GP COMPANY, LLC and LAMAR CENTRAL OUTDOOR, LLC** | : : : : | |
| **Plaintiffs** | : | **3:13-CV-01830** |
| **v.** | : : | **(JUDGE MARIANI)** |
| **GERARD JOYCE** | : : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I. PROCEDURAL HISTORY

The issue that has been placed before this Court is whether the action of Plaintiffs, Lamar Advantage GP Company, LLC, and Lamar Central Outdoor, LLC, (hereinafter "Lamar" or "the Lamar Plaintiffs") must be dismissed pursuant to Federal Rule of Civil Procedure 19 for failure to join Landmark Infrastructure Holding Company, LLC, Bank of America, N.A., and Wilmington Trust National Association, who are the assignees of certain leases between Defendant Joyce, as lessor, and Lamar, as the assignee of Chancellor Media Corporation. For the reasons that follow, the Court finds that the assignees of Joyce are indispensable parties whose joinder would destroy complete diversity as among the parties to this action, therefore requiring that Lamar's complaint, and the entirety of the action, be dismissed.

In order to engage in the required analysis of this issue, the procedural history of this case must be recounted.

On July 3, 2013, Lamar filed suit against Gerard Joyce, individually, Lofts at the Mill, LP, and Lofts GP, LLC (Doc. 1).

On July 31, 2013, the action against Lofts at the Mill, LP and Lofts GP, LLC, was dismissed without prejudice pursuant to a stipulation between the Plaintiff and all Defendants (Doc. 10).

On November 4, 2013, this Court granted Lamar's Motion for Leave to File an Amended Complaint in this case. (Doc. 20). Defendant Joyce then moved to dismiss the Amended Complaint. (Doc. 23). The matter was fully briefed and this Court, by Order dated June 16, 2014 (Doc. 33) denied Defendant's motion to dismiss. In the Memorandum Opinion accompanying this Court's Order, the Court referenced the allegations of Lamar's Amended Complaint, specifically that on October 23, 1998, Chancellor Media Corporation ("Chancellor") and Defendant Joyce entered into a Settlement Agreement and Mutual Release ("Agreement") (Doc. 32, at 2). The Settlement Agreement and Mutual Release whose provisions were alleged in the Amended Complaint to have been breached, is of record in this case (Doc. 85-2).

Paragraph 2D of that Agreement provides as follows:

Joyce agrees not to compete with Chancellor, either separately or in association with others, as an owner, employee, manager, operator, principal, partner, officer, director, share-holder, consultant, representative, agent, investor or private individual in connection with any outdoor advertising

2

business in the greater Scranton/Wilkes-Barre Pennsylvania area and the greater Hartford-Connecticut area for a period of thirty (30) years from the date of this Agreement. The greater Scranton/Wilkes-Barre area shall mean the counties of Lackawanna, Luzerne, Wayne, Pike, Wyoming, Susquehanna, Monroe, Carbon and Schuylkill. For purposes of this Agreement, outdoor advertising business shall mean the construction, ownership and/or leasing of bulletins and poster panels, including the sale of advertising on the same and the leasing of land for the purposes of construction or maintaining bulletins and poster panels, except as contemplated in this Agreement. Notwithstanding the foregoing, Joyce shall not be prohibited from: (i) constructing, owning and leasing a sign structure and outdoor advertising thereon on property owned by Joyce between Exits 55 and 56 on Interstate 81 which structure will be a 660' setback structure; and (ii) purchasing properties on which bulletin boards or poster panels are located at the time of such purchase, provided that the pre-existing lease agreements for such bulletins or poster panels, in effect at the time of such purchase shall remain in effect, for a period of thirty (30) years from the date of Joyce's purchase of such property and shall be honored by Joyce for the said thirty (30) year period (this language is understood by the parties to expressly include the rental amounts as stated in such preexisting leases at the time of Joyce's purchase of any such property); or (iii) owning not more than five percent (5%) of the outstanding shares of any publicly-held corporation engaged in the outdoor advertising business. For purposes of this subsection 2D, the term Joyce shall include any corporation, partnership or other business entity in which Joyce has an ownership interest.

(Doc. 85-2 at 4-5).

Joyce moved to dismiss Lamar's Amended Complaint on a single basis – that the Agreement bars competition only with Chancellor, not Joyce. (Doc. 24, at 8).

This Court denied Joyce's motion to dismiss on the following basis:

Since the Amended Complaint alleges that the Agreement contains a successors and assigns clause (Paragraph 7B), Plaintiff satisfactorily pleads that Agreement obliges Defendant to comply with its provisions, including the non-compete clause of paragraph 2D, for the benefit of Plaintiff as the successor and assignee of Chancellor.

3

(Doc. 32 at 5).

Lamar filed a Second Amended Complaint on December 23, 2014. (Doc. 55).
Attached to the Second Amended Complaint is a document entitled "Intercompany Transfer
and Assignment." (Doc. 55-1, Ex. K). That agreement recites that as of August 11, 1999,
"Lamar Media Corp. acquired (directly or indirectly) ownership of all subsidiaries of the
Chancellor Sellers then holding outdoor advertising assets (collectively, 'Chancellor Outdoor
Subsidiaries'), and as a result Lamar Media Corp. acquired all outdoor advertising assets
and operations of the Chancellor Outdoor Subsidiaries located in the Scranton,
Pennsylvania metropolitan area (collectively 'Chancellor's Scranton Area Outdoor Assets')".
Lamar Central Outdoor, LLC, as assignor, then assigned all of its "right, title and interest in,
to and under Chancellor's Scranton Area Outdoor Assets (and the Agreement), to" Lamar
Advantage GP Company assignee. (*Id.*).

The assignment between Lamar Central Outdoor, LLC, and Lamar Advantage GP
Company, LLC, was undertaken because a prior, written assignment between these parties
had not been located and according to this transfer agreement "Lamar Media Corp. desires
that Assignor perfect the assignment of the Chancellor's Scranton Area Outdoor Assets
(including the Joyce agreement) to Assignee herein." (*Id.*).

As to the claims of Lamar that Joyce had violated the non-compete provisions of the
Settlement Agreement and Release entered into by Joyce and Chancellor which had been
assigned to Lamar, Lamar filed a motion for partial summary judgment on January 22, 2015.

4

(Doc. 58). Previously, Joyce had filed a motion for summary judgment on September 26, 2014. (Doc. 38). These motions were referred to Magistrate Judge Carlson for a Report and Recommendation ("R&R").

Judge Carlson issued his R&R on August 28, 2015. (Doc. 66). Judge Carlson recommended that "Lamar's motion for summary judgment (Doc. 58) be granted but only insofar as it seeks a legal judgment that it is the successor-in-interest to Chancellor and entitled to seek enforcement of its rights under the 1998 Settlement Agreement." (Id. at 23). In all other respects, Judge Carlson recommended that Lamar's motion be denied and that, likewise, the motion for summary judgment of Joyce also be denied.[1]

This Court, by Order dated September 15, 2015 (Doc. 67), and in the absence of objections from either plaintiffs or defendant, adopted the R&R, granted plaintiffs' motion for partial summary judgment insofar as it sought a judicial determination that the plaintiffs are legally entitled to seek enforcement of the Settlement Agreement that provides the basis for this action. This Court further ruled that "[a]s a matter of law, Plaintiffs have standing to enforce their rights under the 1998 Settlement Agreement as successor-in-interest to Chancellor's rights." (Id. at 2). The plaintiffs' motion was denied in all other respects and the defendant's motion for summary judgment was likewise denied.

---

[1] Judge Carlson's analysis with respect to the cross-motions for summary judgment properly turned on the existence of disputes of material fact which precluded summary judgment. For purposes of the issue now addressed by this court, i.e., whether the assignees of Joyce on the leases he entered into with Lamar as obligor must be joined as indispensable parties under Rule 19, extended discussion of Judge Carlson's R&R is not necessary.

5

By Order dated September 23, 2015, trial was scheduled to begin in this case on February 22, 2016, and a final pretrial conference was set for February 12, 2016. (Doc. 70). In accordance with this Court's scheduling order, the parties filed pre-trial memoranda on February 8, 2016. (Docs. 91, 94).

Defendant Joyce's pre-trial memorandum made several assertions, including that Joyce took no action that violated the terms of the non-compete provisions set forth in the Settlement Agreement and Mutual Release. (Doc. 94, at 6-8). Joyce also presented his contentions that he did not engage in a material breach of the non-compete provisions of the Settlement Agreement and Mutual Release. (*Id.* at 8-11).

In addition, Joyce responded to the position taken by the plaintiffs that it was their intention to rescind the Settlement Agreement and to terminate the Site Leases and Facility Lease entered into as part of the Settlement Agreement by Joyce and Chancellor, with Chancellor's interest having been assigned to Lamar. (*Id.* at 11-13). Lamar had contended that Joyce's violation of the non-compete provisions of the Agreement constituted a material breach which excused Lamar from further performance under the Agreement. In response, Joyce argued that the site leases and facility lease had been assigned by Joyce or his companies to entities, who, if joined as defendants, would destroy complete diversity as between the plaintiffs and Joyce, and thus deprive the Court of jurisdiction. Joyce's pre-trial memorandum stated in part:

> However, if Plaintiffs establish a material breach of the Agreement and if they elect to rescind the Agreement, it is anticipated that they may seek to have

6

the Site Leases and the Scranton Facility Lease ("Facility Lease") declared void. The Court does not have jurisdiction over such a claim since its determination implicates indispensable parties that are not parties to this litigation. Joyce's interests under some of the Site Leases and the Facility Lease have been assigned to third parties ("Third Party Assignees") and were assigned to Third Party Assignees at the time of filing this action and Plaintiffs were aware of the same.

(*Id.* at 12).

The issue of the non-joinder of indispensable parties having been raised by Joyce,

the Court, at the pretrial conference, engaged in a discussion of the issue with counsel for

the parties. At the pretrial conference, an attempt was made to identify the entities to which

Joyce had assigned the Site Leases and Facility Lease. Among the assignments which

were identified as being currently in effect were assignments to Bank of America and

Landmark Dividend. Counsel for Lamar confirmed Lamar's position that if it were

successful in this action, it intended to terminate the Site Leases and Facility Lease which

Joyce had assigned to Bank of America and Landmark Dividend. Counsel for Joyce

described the nature and purpose of these assignments as follows:

> **Mr. Weinschenk**: Landmark Dividend is probably a private equity company that purchases billboards, long-term leases from individuals and gives them cash. They take an assignment of that lease for the remainder of the term, and then when the term is up, the lease goes back to the original --
>
> **The Court**: So Landmark fully expects they would get the benefit of that lease over its term.
>
> **Mr. Weinschenk**: That's correct.

(Off. Pretrial Tr., Feb. 12, 2016, at 10).

7

After extended discussion as to the application of Federal Rule of Civil Procedure 19,

as well as a discussion of Lamar's knowledge of the assignment of these leases occurring

after the commencement of this litigation (*id.* at 10-15), the Court inquired as to whether

Lamar would agree that the leases which had been assigned to the non-diverse third parties

would be unaffected by any verdict or judgment in Lamar's favor. Counsel for Lamar did not

agree to such an approach:

> **The Court**: . . . But in any event, my suggestion here would be that we have to postpone this trial and allow you to join these people. I really do not see a way out of that, other than you committing -- it would have to be, again, formally on the record, perhaps, even in documentary form from your client -- that these leases would be unaffected by any verdict or judgment in your favor.
>
> **Mr. McDonough**: No.
>
> **The Court**: And you can't do that.
>
> **Mr. McDonough**: We can't do that.

(*Id.* at 15).

This Court's Order entered February 12, 2016 (Doc. 99), immediately following the

pretrial conference, summarizes the issue of joinder of the non-diverse third party assignees

as raised in the defendant's pretrial memorandum and as discussed at the pretrial

conference. The Order granted Plaintiff thirty days "to make a determination of all

assignees of the Lamar-Joyce leases who shall be joined as Defendants in this matter, as

well as to identify any other indispensable parties, who shall likewise be joined ('the

Supplemental Discovery Period')." (*Id.* at ¶ 2).

8

The Order further granted Plaintiffs an additional thirty days "from the expiration of the Supplemental Discovery Period . . . within which to effect the joinder of all indispensable parties." (*Id.* at ¶ 3).

Finally, the February 12, 2016, Order of this Court provided that within sixty days of the date of the Order, "Plaintiff shall submit of record a report of any assignee or other indispensable party whose joinder will deprive the Court of its jurisdiction. If any such indispensable parties exist, the parties shall have fourteen (14) days from the date on which Plaintiff submits its report to file briefs in support of their respective positions as to 'whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed,' Fed. R. Civ. P. 19 (b), pursuant to Federal Rule 19 and applicable case law." (*Id.* at ¶ 4).

By Order dated March 4, 2016, the Supplemental Discovery Period was extended to April 14, 2016, and Plaintiffs were granted until May 14, 2016 "to effectuate the joinder of indispensable parties" as well as "to submit a report to the Court identifying the assignees and/or indispensable parties whose joinder will deprive the Court of its jurisdiction in this matter." (Doc. 102, at ¶¶ 2, 3). The parties were further granted 14 days from the date Plaintiffs submitted the aforementioned report to file briefs on the issue of whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed . . ." (*Id.* at ¶ 4).

9

On May 10, 2016, the Lamar Plaintiffs moved to amend their Second Amended

Complaint to permit the addition of certain "Joyce affiliated entities" who were identified as

Lofts at the Mills, L.P., Lofts GP, LLC, AMB Investments of Pennsylvania, Inc. and May

Acquisition, LLC. (Doc. 104). Thus, the Lamar Plaintiffs sought leave to file the Third

Amended Complaint attached to their motion (Doc. 104-1).

Lamar's motion seeking leave to file a Third Amended Complaint, alleged:

> The Lamar Entities now seek to include the parties which it previously
> stipulated to dismiss without prejudice, as well as AMB Investments of PA,
> Inc., (a closely held Joyce entity) as well as May Acquisition, an entity
> recently formed by Joyce and an assignee of a site lease subject to the 1998
> Settlement Agreement. These joinders will not destroy this Honorable Court's
> jurisdiction and will permit a merits determination as to the issues which have
> been pending in this Court for nearly three years.

(Doc. 104, at ¶ 12).

In that same motion, the Lamar Plaintiffs asserted that "Joyce had also made an

assignment of the lease payments for the Scranton facility lease which was at issue in this

litigation on February 24, 2015. The assignment of the facility lease was to Bank of

America, N.A. Bank of America, N.A. in turn assigned its interest in the leases and rents

subject to the 1998 Settlement Agreement to Wilmington Trust, National Association on

August 5, 2015." (*Id*. at ¶ 9). The Lamar Plaintiffs, however, did not seek in their motion for

leave to file a Third Amended Complaint leave to add Bank of America, Landmark

Infrastructure Holdings Company, LLC ("Landmark") or the Wilmington Trust.

10

Lamar Plaintiffs, in their brief in support of their motion to file a Third Amended

Complaint (Doc. 107) offered:

> The entry of an Order to permit the filing of the Third Amended Complaint will accomplish the objectives and conform with the procedure outlined by this Honorable Court in its February 12, 2016 Order. Consistent with that Order, Lamar will advise the Court as to the assignees not sought to be joined that will deprive this court of its jurisdiction. Under this procedure, this court can retain jurisdiction in order to make the requisite finding under F.R.C.P. 19(a) and F.R.C.P. 19(b), if necessary.

(*Id.* at 6).

The filing by the Lamar Plaintiffs of a motion for leave to file a Third Amended

Complaint without joining the non-diverse third party assignees of Joyce prompted this

Court to issue an Order on May 23, 2016. (Doc. 112). In that Order, this Court noted that

"the submissions thus far from Plaintiffs have not complied with the framework set forth in

the Court's Order for identifying the 'assignee or other indispensable party whose joinder

will deprive the Court of its jurisdiction [i]f any such indispensable parties exist.'" (*Id.* at 1).

The Court's Order continued:

> Until the issue of the necessary joinder of any indispensable party is resolved, the Court will not consider Plaintiffs' Motion to Add Additional Parties (Doc. 104) in that a review of the documents submitted reveals no attempt to join any indispensable party listed in Plaintiff's letter to the Court on May 13, 2016.

(*Id.* at 2).

The letter of counsel for the Lamar Plaintiffs dated May 13, 2016 (Doc. 108)

identified "the following potential parties as assignees of Joyce/Lofts/ABM Investments of

Pennsylvania, Inc., and May Acquisition, LLC, as assignees of those entities: (1) Landmark

11

Infrastructure Holding Company, LLC; (2) Bank of America, N.A., and (3) Wilmington Trust, National Association, As Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2015-C24, Commercial Mortgage Pass-Through Certificates, Series 2015-C24."

The letter further stated that "[t]he Lamar Entities wish to inform the Court that they will submit their brief consistent with the Court's directive which will include analysis under Federal Rule of Civil Procedure 19 as to whether the foregoing parties are indispensable so that the Court can make a determination as to whether it will relinquish jurisdiction in this matter." (*Id.*).

Counsel for the Lamar Plaintiffs, by letter dated May 31, 2016 (Doc. 113), identified the non-diverse assignees of Joyce whose joinder, Plaintiffs' counsel acknowledged, would deprive this Court of jurisdiction over this matter. Specifically, Plaintiffs' counsel wrote:

> In addition to the above identified indispensable parties, the Plaintiffs identified the following assignees of the Defendants who the Court may also consider to be indispensable parties:
>
> 1. Landmark Infrastructure Holding Company, LLC
> 2. Bank of America, N.A., and
> 3. Wilmington Trust National Association, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2015-C24, Commercial Mortgage Pass-Through Certificates, Series 2015-C24.
>
> The three assignees identified above are Delaware entities. Therefore, the joinder of any of these entities would deprive the Court of jurisdiction over this matter. For this reason and in accordance with Fed.R.C.P. 19 (a) and (b), the Plaintiffs made no attempt to join any of these three assignees as party Defendants in this matter. However, as required by Fed.R.C.P. 19 (c), the Plaintiffs set forth in their proposed Third Amended Complaint (attached as an Exhibit to their Motion for Joinder) the reasons why they were not attempting to join the three assignees identified above.

12

(*Id.*).

Thereafter, the Lamar Plaintiffs filed a "Memorandum of Law in Opposition to Compulsory Joinder of Parties". (Doc. 114). Defendant Joyce, in turn, filed a brief "in Support of his Position that Dismissal of Plaintiffs' Claims is Merited since Equity and Justice require Joinder of Indispensable Parties that Would Deprive the Court of Jurisdiction." (Doc. 115).

Following the Court lifting the stay of briefing on Plaintiff's Motion to Add Parties (Doc. 116), Defendant Joyce filed his brief in opposition to Plaintiffs' motion to file a Third Amended Complaint (Doc. 117).

## II. POSITIONS OF THE PARTIES ON THE ISSUE OF WHETHER THE NON-DIVERSE THIRD PARTY ASSIGNEES OF JOYCE ARE INDISPENSABLE PARTIES SUCH THAT THEIR JOINDER WOULD DESTROY DIVERSITY JURISDICTION AND THUS REQUIRE THAT PLAINTIFFS' COMPLAINT BE DISMISSED

### A. The Position of Defendant Joyce

In his Brief in Support of his Position that Dismissal of Plaintiffs' Claims is Merited since Equity and Justice require Joinder of Indispensable Parties that Would Deprive the Court of Jurisdiction (Doc. 115), Joyce begins by asserting that the Lamar Plaintiffs have made it clear to the Court that they are pursuing rescission of the Settlement Agreement and that "such rescission would result in Plaintiffs' termination of the site leases and facility leases (collectively, the "Leases"), that were contemplated in the Settlement Agreement and eventually entered into with Joyce." (*Id.* at 1). Quoting *Krupa v. Hilcorp Energy I LP*, 2014 WL 2506144, at *13 (W.D. Pa. 2014) and *Fluent v. Salamanca Indian Lease Authority,* 928

13

F.2d 542, 547 (2d Cir. 1991), for the proposition that "it is well settled that 'in an action to set

aside a lease or a contract, all parties who may be affected by the determination of the

action are indispensable'", Joyce argues:

> If the joinder of any assignee divests the district court of subject matter
> jurisdiction (i.e., destroy diversity), the court must determine whether "in
> equity and good conscience" the action should proceed without that party, or
> whether the court should dismiss it, "the absent person being thus regarded
> as indispensable." Fed.R.Civ.P. 19(b). If joinder of any of the assignees
> precludes the Court from exercising diversity jurisdiction then the Court may
> not properly dismiss that assignee and instead must dismiss the entire action
> for lack of subject-matter jurisdiction. *Second State Enterprises, Inc. v. Mid-*
> *Atl. Investments, LLC*, 2014 WL 4091846, at \*3 (M.D. Pa. August 18, 2014).
> Put another way, a finding of indispensability under Rule 19(b) necessitates
> dismissal for lack of subject matter jurisdiction. *Gen. Refractories Co. v. First*
> *State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007).

(Doc. 115, at 6-7).

Defendant Joyce then argues that "each assignee is a party to at least one of the

Leases which Plaintiffs seek to invalidate," and that "[i]f a judgment is granted in Plaintiffs'

favor then they intend to terminate the Leases[; t]ermination of the Leases will directly

impact the rights of the assignees, who are parties to the Leases." (*Id*. at 8). Joyce further

argues that if the Plaintiffs are successful they will either "simply cease making rental

payments pursuant to the Leases or Plaintiffs will notify the assignees of the judgment in

this matter and seek to enforce it as to them. Either of these options directly implicates the

rights of the assignees and more than likely results in secondary litigation involving

Plaintiffs, the assignees, and potentially Joyce." (*Id*. at 9).

14

Joyce further argues that the non-diverse third party assignees of his assignments will be unavoidably prejudiced if this action were to proceed in their absence. Joyce maintains that if Plaintiffs are successful in obtaining the rescission of the Settlement Agreement and the concomitant invalidation of the Leases entered into under the Settlement Agreement, termination of those Leases will be to the prejudice of the assignees whose rights will have been unprotected throughout the litigation. (*Id.* at 10).

Joyce also contends that should this Court dismiss this action for lack of complete diversity, the Plaintiffs will have an adequate remedy in state court since the Settlement Agreement is governed by Pennsylvania law and all issues as to necessary and indispensable parties "could be decided in one matter." This, Joyce argues, "eliminates the risk of duplicative or inconsistent litigation." (*Id.* at 11).

Similarly, Joyce, in his Brief in Opposition to Plaintiffs' Motion to File a Third Amended Complaint (Doc. 117), asserts that Landmark, Bank of America, N.A., and Wilmington Trust are necessary and indispensable parties under Rule 19 "because they are the present holders of the Leases, and are entitled to be a party to an action where the validity of those Leases is being challenged." (*Id.* at 4-5). Thus, Joyce argues "because these parties are indispensable and must be joined, such joinder would deprive this Court of jurisdiction." (*Id.* at 5).

Joyce also defends the timing of his assertion that the non-diverse third party assignees are indispensable parties, stating first that Lamar proceeded through the

discovery phase of this case without ever asserting or otherwise indicating that they

intended to seek termination of the Leases if they were successful in their claims that Joyce

engaged in a material breach of the Settlement Agreement by violating the non-compete

provisions therein. Thus, Joyce argues that he "did not know of any issue that would

potentially implicate indispensable parties. Upon the first notification of Plaintiffs' intent to

seek rescission of the Settlement Agreement and resultant intent to terminate the Leases,

Joyce promptly raised the issue of indispensable parties." (*Id*. at 5). Joyce also notes that

the failure to join a party under Rule 19(b) is a defect that "is so basic that it can be raised

after trial, and either the district court or any appellate court may raise the issue *sua*

*sponte*." (*Id*.) (*quoting* 1 James Wm. Moore & Kevin Shirey, Moore's Federal Practice, ¶

19.3 (2015)).

Joyce argues again that "Landmark, BOA, and Wilmington Trust are 'necessary

parties' under this subsection of Rule 19(a) [Rule 19(a)(1)(A)] because the Court would not

be able to grant the relief the Plaintiffs are seeking (terminating the Leases) without

mandating joinder of the parties to whom the Leases are assigned." (Doc. 117, at 7). Joyce

again submits that the prejudice which would result if the assignees are not joined cannot

be lessened or avoided in that the invalidation of the leases should Lamar be successful in

this action would "directly affect and prejudice the assignees who are parties to the Leases."

(*Id*. at 9). Joyce further states that he "cannot envision any protective measure in the

judgment which might preclude the prejudice to the assignees that will come from

invalidating the Leases." (*Id.*) Thus, Joyce requests that this Court deny Plaintiffs' Motion to File a Third Amended Complaint because that Complaint "does not join three necessary and indispensable parties to said claims, and consequently it would not survive a motion to dismiss." (*Id.* at 12).

## B. The Position of the Lamar Plaintiffs

The Lamar Plaintiffs, in their proposed Third Amended Complaint, "acknowledge that by virtue of the recent assignment by Joyce and/or AMB Investments and Lofts at the Mill, L.P., of their lease interests to Landmark and Bank of America and Wilmington Trust, these assignees possess a putative interest in the outcome of this litigation that would, in this Honorable Court's discretion, warrant their joinder." (Doc. 104-1, ¶ 59).

Lamar then asserts in the next paragraph that when it was made aware of the assignments of certain site leases to Landmark on or about February 3, 2016, it "promptly notified Landmark of this litigation and advised Landmark that it was seeking a judicial declaration that by virtue of Joyce's violation of the 1998 Settlement Agreement, Lamar was entitled to a discharge of all of its obligations to perform under the subject leases." (*Id.* at ¶ 60).

The Lamar Plaintiffs further assert that the joinder of Landmark and Wilmington Trust is not required because they "do not meet the criteria for being a necessary party under Rule 19(a)." (*Id.* at ¶ 61). Alternatively, Lamar asserts that should the Court find that Landmark and Wilmington Trust are necessary parties, their joinder is not feasible "because joinder would defeat diversity of citizenship and deprive this Court of jurisdiction." (*Id.* at ¶ 62).

17

The Lamar Plaintiffs also claim that the joinder of Landmark, Bank of America and Wilmington Trust "will work a substantial hardship and prejudice to Lamar by requiring them to essentially begin this litigation all over again by virtue of what amount to several 'eleventh hour' conveyances by Joyce on the eve of trial in order to avoid a merits determination as to whether Lamar is entitled to relief." (*Id*. at ¶ 63).

Finally, Lamar Plaintiffs claim that "both Landmark and Bank of America, and Wilmington Trust were aware of the instant litigation and chose to enter into these transactions and assignment with Joyce notwithstanding the instant litigation." (*Id*. at ¶ 64).

Thus Lamar requests that this Court enter an Order declaring that Landmark, Bank of America, and Wilmington Trust "are not indispensable parties under F.R.C.P. 19 and permit the action to proceed among the parties named in this Third Amended Complaint." (Doc. 104-1, at 24).

The Lamar Plaintiffs, in their "Memorandum of Law In Opposition to Compulsory Joinder of Parties" (Doc. 114) note that Landmark, Bank of America, N.A., and Wilmington Trust are all Delaware companies (*id*. at 2 n.2) and that by letter dated May 13, 2016, "Plaintiffs' counsel advised the Court of the identity of the above-named non-diverse assignees of the defendant" (*id*. at 3). Plaintiffs argue that their suit may proceed against Joyce without the joinder of the third party non-diverse assignees because they "are not indispensable parties under Rule 19(b)." (*Id*. at 12).

In support of this argument, the Lamar Plaintiffs rely upon *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399 (3d Cir. 1993). (Doc. 114, at 4-6). Lamar likens the facts of the present case to those in *Janney* where only one co-obligor was made a defendant by Janney and the Court determined that the other co-obligor need not be joined because that co-obligor, the Underwood Group, Ltd., which was the parent of Shepard Niles, was jointly and severally liable to Janney and need not be joined by Janney should it decide to proceed against Shepard Niles only. *Janney*, 11 F.3d at 409. Thus, Lamar argues that "[i]f the Agreement in question could be construed or interpreted as a contract imposing joint and several liability on its co-obligors, the Court stated that 'complete relief may be granted in a suit against only one of them.'" (Doc. 114, at 5)(quoting *Janney* at 406). Lamar therefore argues that:

> it is not necessary to join Defendants' assignees in order to grant the Plaintiff the relief he is seeking. An order terminating the Agreement will relieve the Plaintiffs of any further performance thereunder. Plaintiff's claim for breach-related restitution damages is only against the current Defendant. To the extent Defendant's assignees may bear any liability to the Plaintiffs in this matter, such liability would be joint and several.

(Doc. 114, at 5-6).

On this basis, the Lamar Plaintiffs argue that the Court can afford complete relief to them without the joinder of Joyce's third party non-diverse assignees so that they are not necessary parties under Rule 19(a)(1)(A).

With respect to the requirements of Rule 19(a)(1)(B)(i), Lamar asserts that "[a]s none of Defendant's assignees have claimed an interest in this matter or otherwise attempted to

19

join the litigation as a party, F.R.C.P. 19(a)(1)(B) is not applicable to the analysis of whether they are necessary parties to this litigation." (*Id*. at 6). Yet, Lamar also argues that if the Court finds that the assignees of Joyce have claimed an interest in this matter, where an action results in a "'persuasive precedent' against an absent party, the disposition of the action in that party's absence does not impair or impede that party's ability to protect its interest within the meaning of Rule 19(a)(2)(i)." (*Id*. at 7) (citing *Gen. Refractories Co.v. First State Ins. Co.*, 500 F.3d 306, 317(3d Cir. 2007)). Again, Lamar argues that Joyce's assignees are not necessary parties under Rule 19(a)(1)(B)(i).

As to Rule 19(a)(1)(B)(ii), Lamar argues that if it is successful in establishing that Joyce engaged in a material breach of the Settlement Agreement and it accordingly terminates the Leases which have been assigned by Joyce to the non-diverse third party assignees, Joyce's assignees "would likely pursue breach of contract, contribution and/or indemnification claims against the Defendant[; h]owever, Defendant would not be subject to 'the substantial risk of double, multiple or otherwise inconsistent obligations' in any subsequent litigation pursued by its assignees." (Doc. 114, at 7-8). Lamar argues that if the Court determines that the Agreement and the underlying Leases are terminated, "the assignees' claims against the Defendant would simply be to recover the consideration amount they bargained for and expected to receive, i.e., future lease payments." (*Id*. at 8). Lamar then concludes this argument by stating: "As the Defendant was already compensated by the assignees based on the amounts it received in exchange for assigning

20

the leases, no reasonable argument can be made that the Defendant would somehow now be subjected to 'double, multiple or otherwise inconsistent obligations' if the Court terminated the Agreement and the underlying leases." Accordingly, Lamar argues that Defendant's assignees "are not necessary parties under Rule 19(a)(1)(B)(ii)." (*Id.*).

Lastly, the Lamar Plaintiffs acknowledge they "would be able to re-file the action and seek the same remedies in state court against all parties" if this Court were to dismiss this case for lack of subject matter jurisdiction because of the non-joinder of Defendant's non-diverse third party assignees. Lamar argues, however, that requiring the Plaintiffs to do so would result "in considerable delay and increased costs" and that it is unfair to place these burdens upon the Plaintiffs because Joyce "intentionally attempted to destroy diversity in this matter on the eve of trial when he made the lease assignments." (*Id.* at 11).

Lamar concludes with the request that this Court allow the matter to proceed "among the existing parties who are all diverse." (*Id.* at 12).

## III. ANALYSIS

As stated at the outset of this Opinion, the fundamental issues before this Court are whether, under Federal Rule of Civil Procedure 19, the non-diverse lease assignees of Defendant Joyce must be joined as parties in this case under Rule 19(a) and, if they must be so joined, whether they are indispensable parties whose joinder, because it will operate to destroy complete diversity in this case, requires that this Court dismiss the Lamar Plaintiffs' Complaint.

21

In order to resolve these issues, a careful application of Rule 19 is required, and accordingly we begin with the Rule itself. Rule 19 provides:

**(a) Persons Required to Be Joined if Feasible.**

**(1) *Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**(2) *Joinder by Court Order.*** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

**(3) *Venue.*** If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

**(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

**(2)** the extent to which any prejudice could be lessened or avoided by:

**(A)** protective provisions in the judgment;

**(B)** shaping the relief; or

**(C)** other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and

**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

**(c) Pleading the Reasons for Non-joinder.** When asserting a claim for relief, a party must state:

**(1)** the name, if known, of any person who is required to be joined if feasible but is not joined; and

**(2)** the reasons for not joining that person.

Fed. R. Civ. P. 19.

Our Circuit, in *General Refractories Company v. First State Insurance Company,*

discussed each of the requirements of Rule 19 for determining whether under subsection

(a) a party may be deemed a "necessary party" who must be joined and whether such party

must be deemed an "indispensable" party under subsection (b) whose joinder, if not

feasible, will require the dismissal of a complaint.

The Court in *General Refractories* began its analysis as follows:

Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory. In reviewing the district court's conclusion in this regard, we first must determine whether the absent insurers should be joined as "necessary" parties under Rule 19(a). If they should be

23

joined, but their joinder is not feasible inasmuch as it would defeat diversity of citizenship (as would be the case here), we next must determine whether the absent parties are "indispensable" under Rule 19(b). Should we answer this question in the affirmative, the action cannot go forward. *Janney Montgomery Scott*, 11 F.3d at 404 (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1053–54 (3d Cir.1988)).

500 F.3d at 312.

The Court, after setting out the text of Rule 19(a), noted that "[c]ourts treat clauses

(1) and (2) in the disjunctive just as the rule phrases them." *Id*. The Court explained this

statement, quoting its prior decision in *Koppers Co. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170,

174 (3d Cir. 1998) as follows: "As Rule 19(a) is stated in the disjunctive, if either subsection

is satisfied, the absent party is a necessary party that should be joined if possible". *Id*.

Further, the Court made clear that:

> a holding that joinder is compulsory under Rule 19(a) is a necessary predicate to a district court's discretionary determination under Rule 19(b) that it must dismiss a case because joinder is not feasible (i.e., will defeat diversity) and the party is indispensable to the just resolution of the controversy. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.* 11 F.3d 399, 405 (3d Cir. 1993).

*Id*. at 313.

In delineating the requirements of Rule 19(a)(1), the Court added:

> Under Rule 19(a)(1) we ask whether complete relief may be accorded to those persons named as parties to the action in the absence of any unjoined parties. As should be apparent, we necessarily limit our Rule 19(a)(1) inquiry to whether the district court can grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial. *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir.1996) ("Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent

24

person whose joinder is sought."); *Janney Montgomery Scott*, 11 F.3d at 405 (same).

*Id.* (italics in original).

The Court then focused on Rule 19(a)(2) stating:

Notwithstanding a determination that complete relief may be accorded to those persons already named as parties to an action, a court still may deem a party "necessary" under subsection (a)(2) of Rule 19. Unlike subsection (a)(1), subsection (a)(2) requires the court to take into consideration the effect that resolution of the dispute among those parties before it may have on any absent parties.

*Id.* at 316.[2] Under this subsection, "the Court must decide whether determination of the rights of those persons named as parties to the action would impair or impede an absent party's ability to protect its interest in the subject matter of the litigation." *Id*. Thus, "[i]t must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments." *Id.* (quoting *Janney*, 11 F.3d at 409).

As for the other requirement of the former Rule 19(a)(2)(ii), now set forth as Rule 19(a)(1)(B)(ii), the Court in *General Refractories* explained the Court's duty under this section, stating "a Court must decide whether continuation of the action would expose named parties to the 'substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.'" *Id.* at 317.

---

[2] Rule 19(a)(2) is now Rule 19(a)(1)(B)(i) as a result of an amendment to the Rule made effective December 1, 2007.

The application of Rule 19 requires a court, once it determines that a party is a

"necessary" party under Rule 19, to then determine whether the party is "indispensable"

under Rule 19(b). Thus, the Court in *General Refractories* continued:

> As we noted above, when a party is deemed "necessary" under Rule 19(a), joinder must occur if feasible. If joinder of a "necessary" party would divest the district court of subject matter jurisdiction (i.e., destroy diversity), a court must determine whether "in equity and good conscience" the action should proceed without that party, or whether the court should dismiss it, "the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). Put another way, a finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction.

500 F.3d at 319.

The Court discussed the four factors listed in Rule 19(b), first noting that:

> The first and second factors under Rule 19(b) are "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties," and to what extent such prejudice "can be lessened or avoided." Notably, the first factor under Rule 19(b) overlaps considerably with the Rule 19(a) analysis.

*Id.* at 320.

Once again, quoting its prior decision in *Janney,* the Court emphasized that "'[a]

defendant's right to contribution or indemnity from an absent non-diverse party does not

render that absentee indispensable pursuant to Rule 19.'" *Id.* at 320 (quoting *Janney*, 11

F.3d at 412).

As to the third factor under Rule 19(b), the Court observed that this element allows

the Court to consider "whether a judgment rendered in the person's absence will be

adequate", and further observed that it "allows the court to consider whether the relief it

26

grants will prove an adequate remedy for the plaintiff." *Id*. at 320-321. The Court repeated its admonition that "[t]he right to contribution and indemnity should not, therefore, be considered to cause inadequacy of the resulting judgment." *Id*. at 321.

Lastly, with respect to the fourth factor in Rule 19(b) – "whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder" – the Court viewed Rule 19 as "counsel[ing] that courts should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible." *Id*.

With this analytical framework, we now address the particulars of the Rule 19 issues before this Court.

## A. Application of Rule 19(a)

First, this Court must determine whether the absent parties, Landmark, Bank of America, and Wilmington Trust are "necessary" to this action. We begin with Rule 19(a)(1)(A). There, the question presented is whether the absence of each or any of these non-diverse third party assignees of Defendant Joyce prevents the Court from according complete relief among the existing parties to this action. Here, it appears that the Court can accord complete relief among the parties already in this case. Should Lamar prevail on its breach of contract claim against Joyce, and further, should Lamar establish that Joyce's breach of contract is a material breach, then Lamar will be excused from further performance under the Settlement Agreement and accordingly may terminate the leases

which were entered into by its assignor, Chancellor, with Joyce and which are specifically referenced in paragraph 2B and 2C of the Settlement Agreement (Doc 85-2). *See LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 641 (Pa. 2009) ("[W]e conclude that Pennsylvania law permits the immediate termination of such a contract [i.e., a contract that includes an express provision granting the breaching party the right to cure before the contract is terminated] when there is a material breach of the contract so serious it goes directly to the heart and essence of the contract, rendering the breach incurable . . ."). *See also, Int'l Diamond Importers, Ltd., v. Singularity Clark, L.P.*, 40 A.3d. 1261, 1271 (Pa. Super. 2012) ("a 'material breach' relieves a non-breaching party of its obligation to perform . . .").

Thus, were Lamar to prevail in this action and, in so doing, establish that Joyce's breach of the Settlement Agreement was indeed material, Lamar would be excused from further performance. This would in turn mean that Lamar could properly terminate, or fail to comply with, the leases that its assignor, Chancellor, had entered into with Joyce and which have now been assigned by Joyce to the third party non-diverse assignees named above. The result of such a termination of the leases assigned to Landmark, Bank of America, and Wilmington Trust is the cessation of lease payments from Lamar to Landmark, Bank of

America, and Wilmington Trust. But certainly as to the entities "already named" as parties to this action, *General Refractories, supra* at 313, this Court can accord complete relief.[3]

Rule 19(a)(1)(B), on the other hand, requires a different conclusion. The three third-party, non-diverse assignees clearly claim an interest relating to the subject of this action and are in fact so situated that disposing of the action in the assignees' absence will "as a practical matter impair or impede" each assignee's ability to protect its interest. *See* Rule 19(a)(1)(B)(i); Moore's Federal Rules Pamphlet 2017, § 19.4[1][b] ("Under the second test of Rule 19(a)(1)(B), if the absentee has an interest in the subject of the action that could be impaired or impeded or that might leave the present parties subject to inconsistent obligations, the absentee is a required party. 4 MOORE'S FEDERAL PRACTICE §19.03 [3],[4] (Matthew Bender 3d ed.)").

Landmark, Bank of America, and Wilmington Trust, as assignees of Joyce have an interest relating to the subject of this action, the protection of which may be impaired by their absence in this proceeding.

In *Krupa v. Hilcorp Energy I LP,* 2014 WL 2506144 (W.D. Pa. 2014), the Court adopted the Report and Recommendation of the Magistrate Judge and held that the

---

[3] While it might be argued that this conclusion is erroneous because Lamar, even if successful, may face opposition from the assignees when it ceases making lease rental payments to them, Lamar has made no such argument. Indeed Lamar has argued that complete relief can be accorded among existing parties in the absence of the third party non-diverse assignees of Joyce. (*See* Doc. 114 at 6)("Therefore, because the Court can afford complete relief to the Plaintiff without joinder of Defendant's assignees, Defendant's assignees are not necessary parties under Rule 19(a)(1)(A).") Joyce, of course, has not only argued that its third party non-diverse assignees are necessary parties but that they are also indispensable, and since their joinder would destroy diversity, the Complaint must be dismissed.

assignees of certain leases were indispensable parties in an action where the plaintiffs

sought a declaratory judgment that the leases were void *ab initio* and that any purported

assignments of the rights under those leases were also void *ab initio*.

The Court granted the plaintiffs' motion for remand to state court. The Magistrate

Judge, whose Report and Recommendation had been adopted, had written:

> Plaintiffs are challenging the validity of the Leases, thus placing at issue the
> validity of all the subsequent assignments of those Leases. It is well settled
> that "in an action to set aside a lease or a contract, all parties who may be
> affected by the determination of the action are indispensable." *Fluent v.
> Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir. 1991) (citing
> *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975); *McClendon
> v. United States*, 885 F.2d 627, 633 (9th Cir 1989)). Thus, if it is ultimately
> determined that the Krupa Lease and Class Member Leases are void *ab
> initio*, then none of the subsequent assignments would be valid, and any
> declaratory relief granted will have a collateral effect on the rights and
> interests of the subsequent assignees/assignors, including ERI. For that
> reason, the Court finds that all of the subsequent assignees/assignors with
> the exception for ERM, are necessary parties to this declaratory judgment
> action.

2014 WL 2506144, at *13.

The *Salamanca Indian Lease* decision, relied upon in *Krupa*, leaves no question that

parties who are affected by an action to set aside a lease or a contract are indispensable:

> There can be no doubt that the Nation qualifies under rule 19(a) as an
> indispensable party to these claims. As a party to an Agreement negotiated
> for over two decades, the Nation's interest in the validity of the lease
> agreement is significant. *See Crouse-Hinds Co. v. InterNorth, Inc.,* 634 F.2d
> 690, 701 (2d Cir.1980) (citing *Lomayaktewa,* 520 F.2d at 1325 ("[n]o
> procedural principle is more deeply imbedded in the common law than that, in
> an action to set aside a lease or a contract, all parties who may be affected by
> the determination of the action are indispensable")); *McClendon v. United
> States,* 885 F.2d 627, 633 (9th Cir.1989) (same).

30

*Salamanca Indian Lease*, 928 F.2d at 547. *See also, Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 81 (1st Cir. 1982) ("Our conclusion that Acton is an 'indispensable' party under Rule 19(b) is supported by other cases holding that an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined.").

As in *Krupa*, the Lamar Plaintiffs here seek to invalidate the leases which Joyce entered into with Lamar's assignor, Chancellor, as part of its claimed remedy for the material breach of the Settlement Agreement which it asserts has been engaged in by Joyce. In doing so, Lamar has, as did the plaintiff in *Krupa*, "plac[ed] at issue the validity of all the subsequent assignments of those Leases." *Krupa*, 2014 WL 2506144, at 13.[4]

Should it be determined that Joyce has in fact engaged in a material breach of the Settlement Agreement and that the Lamar Plaintiffs are entitled to terminate the leases which have been assigned to the non-diverse assignees, Landmark, Bank of America, and Wilmington Trust, then, as in *Krupa,* the rights and interests of these assignees would be directly placed at risk of termination. In effect, the lease payments which the Lamar Plaintiffs would otherwise pay to any one or all of these non-diverse third party assignees would

---

[4] The plaintiff in *Krupa* sought a determination that the leases at issue and the subsequent assignments were void *ab initio*. Here, the Lamar Plaintiffs seek to terminate their leases with Joyce based on the claim of a material breach by Joyce of the Settlement Agreement and their right to rescind that agreement. That Plaintiffs here seek to terminate the leases entered into under the Settlement Agreement as a remedy for Joyce's alleged breach of the Settlement Agreement rather than on the basis of a declaration that the leases are void *ab initio*, makes the principles set forth in *Krupa* requiring joinder of the lease assignees no less applicable here.

cease. In those circumstances, that the interests of these assignees would be impaired is beyond dispute.

The conclusion that Landmark, Bank of America, and Wilmington Trust are parties who must be joined and in fact are indispensable to this case is significantly buttressed by the decision in *Denkmann Associates v. International Paper Company,* 132 F.R.D. 168 (M.D. La. 1990). There, the District Court held that the assignee of certain timber rights under two agreements was an indispensable party in a suit by a predecessor in interest seeking to rescind the lease agreements. Since the assignee, IP Timberlands Operating Company, Ltd. ("IPTO") was determined to be an indispensable party and IPTO could not be named as a party without destroying diversity jurisdiction, the action was dismissed.

In *Denkmann*, the plaintiff, Denkmann Associates, filed suit against International Paper Company seeking rescission of two agreements involving timber lease and mineral rights in Louisiana and Mississippi ("the 1945 Agreements"). Under the 1945 Agreements, the timber interests of properties owned by Denkmann Lumber Company were transferred to Southern Kraft for a period of 99 years. Southern Kraft then assigned all of its interest in the 1945 Agreements to International Paper. International Paper then transferred all of its interest to IP Timberlands, Ltd., and IP Timberlands transferred its interest to IPTO. 132 F.R.D. at 169. Denkmann Lumber Company, in turn, assigned its interest in the 1945 Agreements to Denkmann Associates and others. *Id.*

International Paper filed a motion to dismiss for failure to join an indispensable party and for lack of subject matter jurisdiction, asserting that the four factor test set forth in Rule 19(b) required a finding that IPTO was an indispensable party. International Paper argued that since IPTO held almost 100% of the timber rights under the leases and was the party in possession of the subject premises, its presence was required as a party indispensable to the resolution of the action.

The Court identified the issue before it as follows:

The issue before the Court is whether IPTO is an indispensable party to this litigation. If IPTO is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure, then the case must be dismissed for lack of subject matter jurisdiction under *Carden* [v. Arkoma Assoc., 494 U.S. 185 (1990)] since there is no diversity of citizenship between Denkmann and IPTO.

*Id.* at 171.

The District Court first found that "substantial doubt" existed as to whether complete relief could be accorded between Denkmann and International Paper. The Court reasoned:

If Denkmann proves that International Paper is liable under the guaranty of the 1945 Agreements and/or under operation of law for any damages caused by IPTO, Denkmann would be entitled to a rescission of the 1945 Agreements. Presumably, the complete relief sought by Denkmann also includes being restored to possession of the timberland. However, IPTO is currently in possession of this timberland. Since IPTO is not a party to this litigation, any judgment would not be binding on it. Denkmann would have to resort to the state courts of Louisiana and Mississippi for recognition of any such termination of the 1945 Agreements against IPTO and to evict IPTO from possession of the timberland. It is possible and indeed probable that IPTO may have certain defenses to that action which might require the state court to relitigate all or part of this action.

*Id.* at 172.

33

The Court found that "IPTO should be joined as a party since complete relief cannot be accorded without its presence under Rule 19(a)(1)." The Court added that "[f]urthermore, IPTO's interest will be prejudiced without its presence under Rule 19(a)(2)(i)." *Id.* at 175.

Since diversity of citizenship was lacking as between IPTO and Denkmann, such that joinder of IPTO would destroy diversity jurisdiction, the Court then addressed whether the action could proceed without IPTO or whether the case must be dismissed for failure to join an indispensable party. *Id.* at 175-176.

Denkmann argued that neither it nor International Paper would be prejudiced if the case proceeded to trial without IPTO. *Id.* at 176. However the Court determined that the prejudice which IPTO would suffer if it were excluded as a party required its joinder. The Court explained:

> What Denkmann fails to adequately address and consider is the prejudice which IPTO will suffer if it is excluded as a party. As discussed above, IPTO is the party in possession of the timberland in dispute and stands to lose the rights it now has for the remaining 54 years under the 1945 Agreements. Certainly IPTO has as much, if not more at stake in this litigation as Denkmann and any other party. Should the Court render a judgment which would cast a rescission of International Paper's rights under the 1945 Agreements, such a judgment could terminate IPTO's rights which were derived from International Paper under the 1945 Agreements even though IPTO would not be a party. The Court believes such a procedure would be harsh and not in the interest of justice or judicial economy.

132 F.R.D. at 176.

The Court's analysis in *Denkmann* has application to the case here where the third party non-diverse assignees of Joyce will suffer prejudice if this case proceeds in their

34

absence, such as the Court in *Denkmann* found IPTO would face if it were not joined as a party. In this case, the Joyce third party non-diverse assignees expect to receive payments from the Lamar Plaintiffs for an additional 11 years. (*See* Settlement Agreement and Mutual Release, Doc. 85-2, dated October 23, 1998, and establishing terms of 30 years for the site leases (¶ 2(b)(i)) and a term of 30 years for the facility lease (¶ 2(c))). Should a judgment issue in this case rescinding the agreement between Joyce and Lamar on the basis of a material breach of that agreement by Joyce, the third party assignees' rights which were derived from Joyce's assignment of the leases entered into under the Settlement Agreement would be subject to termination, even though Landmark, Bank of America, and Wilmington Trust would not be parties to this action and would not have participated in this determination. Like the court in *Denkmann,* this Court believes such a procedure is not in the interest of justice or judicial economy. As in *Denkmann*, where that court observed that there was an available forum in which all the parties could litigate all of the issues at the same time, there is likewise such a forum here as will be addressed later in this Opinion.

Moreover, the court in *Denkmann* made clear that its decision was consonant with the principle that "an assignee of an agreement is generally an indispensable party to an action to terminate that agreement." 132 F.R.D. 178.

The Lamar Plaintiffs assert, citing to *Janney*, that joinder of the Joyce non-diverse third party assignees is not necessary since "[i]f the Agreement in question could be construed or interpreted as a contract imposing joint and several liability on its co-obligors,

35

the Court [in *Janney*] stated that 'complete relief may be granted in a suit against only one

of them.'" (Doc. 114, at 5). The Lamar Plaintiffs then argue that:

> it is not necessary to join Defendant's assignees in order to grant the Plaintiff
> the relief he is seeking. An order terminating the Agreement will relieve the
> Plaintiffs of any further performance thereunder. Plaintiff's claim for breach-
> related restitution damages is only against the current Defendant. To the
> extent defendant's assignees may bear any liability to the Plaintiffs in this
> matter, such liability would be joint and several. Where liability is several,
> complete relief may be granted in a suit against any one of severally liable
> parties.

(*Id.* at 5-6). Accordingly, the Lamar Plaintiffs argue that "because the Court can afford

complete relief to the Plaintiff without joinder of Defendant's assignees, Defendant's

assignees are not necessary parties under Rule 19(a)(1)(A)." (*Id.* at 6).

The Lamar Plaintiffs misread the decision in *Janney*. In that breach of contract

action, Janney brought suit against only one of the *two co-obligors* who might be liable to it.

Janney brought suit against Shepard Niles but not against its parent corporation, the

Underwood Group, Ltd. Janney contended it was entitled under its Investment Banking

Agreement to serve as an advisor to Underwood and its subsidiaries, including Shepard

Niles, and to assist them in obtaining private placement financing to refinance Shepard

Niles' debt obligations. 11 F.3d at 402. Subsequently, Underwood obtained private

placement financing for Shepard Niles, although not through Janney. Janney in turn

contended that it provided substantial advice and support to Underwood and Shepard Niles

and was therefore entitled to a contingent fee for its services. *Id.* at 402-403. Shepard

Niles sought judgment on the pleadings against Janney for failure to join Underwood as an

indispensable party. *Id*. at 403. The Court concluded that because the agreement between Janney and Underwood could be construed to impose joint and several liability, Underwood was not a necessary party under Rule 19(a) and that complete relief could be granted as between Shepard Niles and Janney without Underwood's presence. *Id*. at 406. This decision turned on the Court's determination that, consistent with principles of joint and several liability, a co-obligor is not a party whose joinder is required by Rule 19:

> For the reasons already stated, we hold instead that Underwood, a co-obligor, is not a party whose joinder Rule 19(a)(2)(i) requires because continuation of the federal litigation in Underwood's absence will not create a precedent that might persuade another court to rule against Underwood on principles of *stare decisis,* or some other unidentified basis not encompassed by the rules of collateral estoppel or issue preclusion.

11 F.3d at 409.

*Janney* provides no support for the Lamar Plaintiffs because the joinder of co-obligors is not at issue here as it was in *Janney*. The co-obligors there, who were alleged to owe a fee to Janney, were Shepard Niles and its parent company, Underwood. Here, Joyce and its third party assignees are *co-obligees*, rather than co-obligors, in that Joyce initially was entitled to the lease payments to be made by the Lamar Plaintiffs for the leases granted to them under the terms of the Settlement Agreement and the third party non-diverse assignees, Landmark, Bank of America, and Wilmington Trust, became entitled to receive the lease payments from the Lamar Plaintiffs for the site and facility leases as assignees of Joyce with respect to those leases.

Significantly, the decision in *Janney* leaves no question that joint obligees are indispensable parties. In *Janney*, the Court discussed the First Circuit's decision in *Acton Co. v. Bachman Foods, Inc.* There, Acton Co., Inc. of Massachusetts ("ACIM"), filed suit, alleging that Bachman had breached an agreement that it had entered into with ACIM and Acton Corp., ACIM's parent company. The suit sought damages and a declaratory judgment that no enforceable agreement existed between Bachman and ACIM. The Court held that Acton Corp., as a co-obligee of the agreement, was an indispensable party and must be joined, despite the fact that the joinder of Acton Corp. would defeat diversity. *Janney*, 11 F.3d at 408. The First Circuit's concern focused on the ability of Acton Corp., as a co-obligee on the agreement with Bachman, to bring a separate cause of action against Bachman that could subject Bachman to double liability on the same claim that ACIM was making in the federal action.

Distinguishing *Acton* on the basis that Shepard-Niles and Underwood were co-obligors, the Court in *Janney* nonetheless recognized that joint obligees, like Acton Corp. and ACIM, are indispensable parties whose nonjoinder requires dismissal:

> [The *Acton* court] held Acton's presence was necessary for the grant of complete relief. [ ]. No such concern is present here. Shepard Niles argues that Underwood is a necessary and indispensable defendant because it is potentially a co-obligor with Shepard Niles, not a potential co-obligee, as in *Acton*. As one commentator has noted:
>
> > Today the joinder of obligors is left to plaintiff's discretion by many courts and he may select defendants without being concerned about dismissal because of nonjoinder. Joint obligors thus are treated as Rule 19(a) parties but are not deemed indispensable under Rule 19(b). . . .

> Joint *obligees*, on the other hand, usually have been held indispensable
> parties and their nonjoinder has led to a dismissal of the action.

> 7 Charles A. Wright et al., *Federal Practice and Procedure* § 1613 at 182-85
> (1986) (emphasis and footnote added); *cf. Brackin Tie, Lumber & Chip Co. v.
> McLarty Farms, Inc.,* 704 F.2d 585, 586–87 (11th Cir.1983) (endorsing
> distinction between obligor and obligee in evaluating whether absent joint
> obligor was indispensable party under Rule 19); *Wolgin,* 397 F.Supp. at
> 1012 ("[J]oint obligors (persons who owe a duty of performance), as opposed
> to joint obligees (persons to whom a duty is owed), have never been
> considered indispensable parties.") (citations omitted).

*Id.* at 408.

Here, Joyce and the third party assignees are obligees in that they are entities to

whom a duty, in this case the duty to make lease payments, is owed. They are as such

indispensable parties as joint obligees under *Janney.* Thus, the case law with respect to the

necessary joinder of parties, including assignees, who have an interest in a contract or a

lease sought to be rescinded, as well as the status of Joyce and his third party non-diverse

assignees as obligees, require their joinder.

As a result, the issue that now remains before this Court is whether such joinder is

feasible. This in turn requires the application of the four factors set forth in Rule 19(b)(1-4).[5]

---

[5] With respect to whether joinder of Landmark, Bank of America, or Wilmington Trust is required
under Rule 19(a)(1)(B)(ii), neither defendant Joyce nor the Lamar Plaintiffs assert its application here. To
the extent that this subsection of Rule 19(a) needs to be considered, the Court observes only that the
nonjoinder of the third party assignees of Joyce could leave Joyce subject to "a substantial risk of incurring
double, multiple, or otherwise inconsistent obligations because of the interest" of the absent assignees,
although Joyce does not argue for joinder on this basis.

## B. Application of Rule 19(b)

Where, as here, a court determines that a party must be joined under Rule 19(a), but

that doing so is not "feasible", "then the court analyzes Rule 19(b) to determine if 'in equity

and good conscience,' the necessary party is indispensable." *Foster Owners Co., LLC v.*

*Farrell*, 2015 WL 778758, at *3 (D.N.J. 2015). "In other words, where joinder is procedurally

infeasible, the court must evaluate whether 'the action should proceed among the existing

parties or should be dismissed.' Fed.R.Civ.P. 19(b); *see also Guthrie Clinic Ltd. v.*

*Travelers Indem. Co. of Ill.*, 104 Fed. Appx. 218, 221 n.4 (3d Cir. 2004)." *Id.*

These Rule 19(b) principles were distilled by the Court in *General Refractories* and

stated as follows:

[W]hen a party is deemed "necessary" under Rule 19(a), joinder must occur if feasible. If joinder of a "necessary" party would divest the  district court of subject matter jurisdiction (i.e., destroy diversity), a court must determine whether "in equity and good conscience" the action should proceed without that party, or whether the court should dismiss it, "the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). Put another way, a finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction.

500 F.3d. at 319.

40

The Court in *General Refractories* turned to the four factors listed in Rule 19(b)

which a court must consider in determining whether, where joinder of an absent party is not

feasible, the action should proceed among the existing parties or should be dismissed.[6]

The Court explained that while these four factors are not exhaustive, they are deemed to be

"'the most important considerations' in determining whether a party is indispensable." *Id.*

(citing to *Gardiner v. V.I.Water & Power Auth.*, 145 F.3d 635, 640 (3d Cir. 1998)).

The application of the four factors compels the conclusion here that the action should

not proceed among the existing parties and instead should be dismissed. We now discuss

the application of those factors which warrant that conclusion.

> *1. The extent to which a judgment rendered in the absence of Landmark, Bank of America, and Wilmington Trust might prejudice any of these assignees of Joyce or the existing parties to this action.*

This Court, in its discussion of *Krupa v. Hillcorp Energy, supra,* has already

recognized the principle that "in an action to set aside a lease or a contract, all parties who

may be affected by the determination of the action are indispensable." *Krupa,* 2014 WL

2506144, at *13. This principle underlies the ruling in *Denkmann Associates, supra,* 132

---

[6] The four factors are:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

F.R. D. at 178 ("[a]n assignee of an agreement is generally an indispensable party to an action to terminate that agreement."). Here, the Joyce non-diverse third party assignees expect to receive lease payments for the Site Leases and Facility Lease from Lamar as the assignee of Chancellor under the Settlement Agreement between Chancellor and Joyce for the next 11 years. (See Settlement Agreement and Mutual Release, Doc. 85-2, dated October 23, 1998, and establishing terms of 30 years for the site leases (¶ 2(b)(i)) and a term of 30 years for the facility lease (¶ 2(c))). Clearly, the assignees, as the entities who expect to receive payments from the Lamar Plaintiffs, have a substantial stake in the subject action at issue here and a judgment rendered in each assignee's absence would prejudice that assignee in a direct and significant way.

As in Denkmann, "[i]t is possible and indeed probable" that the assignees may have certain defenses that would not be asserted in this Court as a result of their absence and "which might require the state court to relitigate all or part of this action." Denkmann, 132 F.R.D. at 172.

As noted in General Refractories, "the first factor under Rule 19(b) overlaps considerably with the Rule 19(a) analysis." 500 F.3d at 320. This court, having found that under Rule 19(a)(1)(B) the third party assignees of Joyce claim an interest relating to the subject matter of this action and are so situated that disposing of this action in their absence may impair or impede their ability to protect their interests, also finds under Rule 19(b)(1) that a judgment rendered in the absence of the third party assignees of Joyce would

prejudice their interests, specifically their right to receive lease payments from Lamar in the circumstance where Lamar obtains a judgment terminating those leases on the basis of Joyce's material breach of the Settlement Agreement.

*2. The extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures.*

Here, the prejudice that would ensue with respect to the third party non-diverse Joyce assignees cannot be lessened or avoided by protective provisions in the judgment or by otherwise shaping the relief to which the Lamar Plaintiffs would be entitled should they succeed in establishing that Joyce engaged in a material breach of the Settlement Agreement.

At the pretrial conference held in this matter on February 12, 2016, the Lamar Plaintiffs expressed their firm intention to seek the termination of the site and facility leases to which they are a party with Joyce. Counsel for Lamar, in response to a suggestion from the Court that the issue of the indispensability of Joyce's non-diverse third party assignees might be avoided if the Lamar Plaintiffs agreed not to pursue the termination of those leases if they were successful in their suit against Joyce, specifically declined to agree to such a protective provision in the judgment or to the shaping of any relief to which Lamar may be entitled if successful in this action. (*See* Off. Pretrial Tr., Feb. 12, 2016, at 15). As a result, it is clear that there are no protective provisions, nor any manner in which the Court could shape relief, or take other measures, which could lessen or avoid the prejudice that the non-

diverse assignees would suffer were they not joined. It also bears noting that Plaintiffs have offered none.

*3. Whether a judgment rendered in the absence of the Joyce non-diverse third party assignees would be adequate.*

For the reasons offered with respect to factor one under Rule 19(b), a judgment rendered in the absence of the non-diverse assignees would not be adequate. Such a judgment implicates fundamental considerations of procedural due process if it were advanced by the Lamar Plaintiffs as grounds for terminating their obligation to make payments under the site and facility leases which had been assigned to the Joyce assignees. This conclusion follows unavoidably from the accession of the Joyce assignees to the rights of Joyce under the site and facility leases and, specifically, the right to receive the lease payments from Lamar for the remaining term of those leases.

*4. Whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.*

"Rule 19 counsels that courts should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible." *Gen. Refractories*, 500 F.3d at 321.

The Lamar Plaintiffs, in their Memorandum in Opposition to Compulsory Joinder of Parties, acknowledge that "[i]f the Court did dismiss the case for lack of subject matter jurisdiction based on the non-joinder of Defendant's assignees, the Plaintiffs would be able to re-file the action and seek the same remedies in state court against all parties." (Doc.

114, at 11). The statement of the Lamar Plaintiffs is correct. Pennsylvania has specifically

provided, at 42 Pa.C.S.A. §5103(b), that "[w]here a matter is filed in any United States court

for a district embracing any part of this Commonwealth and the matter is dismissed by the

United States court for lack of jurisdiction, any litigant in the matter filed may transfer the

matter to a court or magisterial district of this Commonwealth by complying with the transfer

provisions set forth in paragraph (2)." The full text of § 5103 is set forth as follows:

> (a) General rule.--If an appeal or other matter is taken to or brought in a court
> or magisterial district of this Commonwealth which does not have jurisdiction
> of the appeal or other matter, the court or magisterial district judge shall not
> quash such appeal or dismiss the matter, but shall transfer the record thereof
> to the proper tribunal of this Commonwealth, where the appeal or other matter
> shall be treated as if originally filed in the transferee tribunal on the date when
> the appeal or other matter was first filed in a court or magisterial district of this
> Commonwealth. A matter which is within the exclusive jurisdiction of a court
> or magisterial district judge of this Commonwealth but which is commenced in
> any other tribunal of this Commonwealth shall be transferred by the other
> tribunal to the proper court or magisterial district of this Commonwealth where
> it shall be treated as if originally filed in the transferee court or magisterial
> district of this Commonwealth on the date when first filed in the other tribunal.
>
> (b) Federal cases.--
>
> (1) Subsection (a) shall also apply to any matter transferred or remanded
> by any United States court for a district embracing any part of this
> Commonwealth. In order to preserve a claim under Chapter 55 (relating to
> limitation of time), a litigant who timely commences an action or
> proceeding in any United States court for a district embracing any part of
> this Commonwealth is not required to commence a protective action in a
> court or before a magisterial district judge of this Commonwealth. Where a
> matter is filed in any United States court for a district embracing any part of
> this Commonwealth and the matter is dismissed by the United States court
> for lack of jurisdiction, any litigant in the matter filed may transfer the
> matter to a court or magisterial district of this Commonwealth by complying
> with the transfer provisions set forth in paragraph (2).

45

(2) Except as otherwise prescribed by general rules, or by order of the United States court, such transfer may be effected by filing a certified transcript of the final judgment of the United States court and the related pleadings in a court or magisterial district of this Commonwealth. The pleadings shall have the same effect as under the practice in the United States court, but the transferee court or magisterial district judge may require that they be amended to conform to the practice in this Commonwealth. Section 5535(a)(2)(i) (relating to termination of prior matter) shall not be applicable to a matter transferred under this subsection.

(c) Interdivisional transfers.--If an appeal or other matter is taken to, brought in, or transferred to a division of a court to which such matter is not allocated by law, the court shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper division of the court, where the appeal or other matter shall be treated as if originally filed in the transferee division on the date first filed in a court or magisterial district.

(d) Definition.--As used in this section "tribunal" means a court or magisterial district judge or other judicial officer of this Commonwealth vested with the power to enter an order in a matter, the Board of Claims, the Board of Property, the Office of Administrator for Arbitration Panels for Health Care and any other similar agency.

42 Pa.C.S.A. § 5103.

In *Williams v. F.L. Smithe Machine Co., Inc.,* the Pennsylvania Superior Court stated:

It is evident from the clear and unambiguous language of 42 Pa. C.S.A. § 5103(a) and (b), that if a matter is originally filed within the statute of limitations in the federal court, but is dismissed for lack of jurisdiction by the federal court, the litigant may then effect a transfer of the action to state court by complying with the provisions set forth in 42 Pa. C.S.A. § 5103(b)(2). The state court will treat the matter as if originally filed in the state court if the litigant complies with the dictates of 42 Pa. C.S.A. § 5103(b)(2).

577 A.2d. 907, 909 (Pa. Super. 1990), *app. denied,* 593 A.2d 422 (Pa. 1991).

The Court in *Williams* also made clear that:

in order for [§ 5103] to apply to prevent a litigant from losing the opportunity to litigate his case on the merits simply because he is in error regarding federal jurisdiction, it is not necessary that the federal court transfer the case or take other action following the determination that federal jurisdiction is absent. All that is required is an order entered by the federal court dismissing the matter for lack of jurisdiction. It is then incumbent upon the litigant to take further action under the statute to move the case to state court.

*Id.*

In *Williams*, the federal district court had previously dismissed the action because "appellants are citizens of Pennsylvania and F.L. Smithe Machine Co., Inc. is a Pennsylvania corporation, thus preventing the exercise of diversity jurisdiction by the federal court." *Id.* at 908. *See also, Windle v. Earl*, 2012 WL 1694542 (E.D. Pa. 2012) (Where diversity of citizenship is lacking, plaintiff could still seek relief in state court under § 5103)(a)(b)).

Because the joinder of Landmark, Bank of America or Wilmington Trust would destroy complete diversity and because this Court has found that each of these assignees is an indispensable party to the pending action between the Lamar Plaintiffs and Joyce, this Court has determined in accordance with the factors set forth in Rule 19(b)(1-4) that this action should not proceed among the existing parties and instead should be dismissed for lack of jurisdiction.

## IV. PLAINTIFFS' MOTION TO ADD ADDITIONAL PARTIES

As previously mentioned, in addition to the parties' briefing on the issue of whether the

assignees, and in particular the non-diverse assignees, are indispensable parties and must be

joined, Plaintiffs also filed a Motion to Add Additional Parties (Doc. 104). Specifically, Plaintiffs

moved to add Lofts at the Mills, L.P., Lofts GP, LLC, AMB Investments of Pennsylvania, Inc.,

and May Acquisition, LLC, all entities whose joinder would not defeat diversity.

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ.

P. 15(a)(2). The Supreme Court has described Federal Rule 15 as follows:

> [Rule 15(a)'s] mandate is to be heeded. If the underlying facts or
> circumstances relied upon by a plaintiff may be a proper subject of relief, he
> ought to be afforded an opportunity to test his claim on the merits. In the
> absence of any apparent or declared reason—such as undue delay, bad faith
> or dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment, futility of
> amendment, etc.—the leave sought should, as the rules require, be "freely
> given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 222 (1962) (internal citations

omitted); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("Among the

factors that may justify denial of leave to amend are undue delay, bad faith, and futility.").

Here, the Court has already found that non-diverse assignees Landmark

Infrastructure Holding Company, LLC, Bank of America, N.A., and Wilmington Trust

National Association are indispensable parties who must be joined. Therefore, allowing

Plaintiffs to amend their Complaint to add the proposed parties would be futile, in that the

48

three indispensable parties would remain absent from this action. Plaintiffs' motion will therefore be denied.

## V. CONCLUSION

For the foregoing reasons, the Court will dismiss this action for lack of subject matter jurisdiction. A separate Order shall issue.

10-12-17

Robert D. Mariani
United States District Judge